[Civ. No. 869. Third Appellate District.—September 29, 1911.]

W. R. BARBREE and A. W. COFFEY, Appellants, v. W. S. KINGSBURY, as Register of the State Land Office, Respondent.

STATE LAND—SIXTEENTH SECTION—SURVEY SHOWING 642.24 ACRES—TRUE AFFIDAVIT—GOOD FAITH—FULL PAYMENT—RULE OF APPROXIMATION—RIGHT TO PATENT—MANDAMUS.—Where an applicant to purchase a sixteenth section of state school land under a government survey, showing that it contained 642.24 acres, truly set forth that he applied for no state land exceeding that number of acres, and payment was made in good faith in full therefor, his successors are entitled to a patent therefor under the rule of approximation applied in the land department; and where the trial court had refused a writ of *mandamus* to compel the register of the state land office to issue the usual certificate to the governor for the issuance of a patent therefor, the judgment must be reversed.

ID.—POLICY OF STATE—ATTITUDE OF WRONGDOER—JUST AND LIBERAL INTERPRETATION OF STATUTE.—Though it has not been the policy of the state to sell large tracts of land, but rather, on the other hand, it has been its policy to encourage settlers to live on state lands in small tracts, yet it is equally true that the state should not assume the attitude of a wrongdoer; nor should the letter of the statute be applied in favor of injustice, where it is possible by a liberal spirit of interpretation to reach a righteous conclusion.

ID.—PECULIAR AND PERSUASIVE FACTS IN FAVOR OF PETITIONERS.—It is held that the facts are peculiar and persuasive in favor of the claim of the petitioners for the writ of mandate where it appears that the application to purchase the land was made more than twenty-five years prior thereto, that the requisite portion of the purchase price was then paid, and that for twenty-three years the interest on the residue was regularly paid and accepted by the state, at the expiration of which the final payment was made to the state; that there has been no contesting applicant, and no one has been wronged by the purchase, and that the excess over the 640 acres is so trifling as to be scarcely worth considering.

ID.—"RULE OF APPROXIMATION" IN LAND DEPARTMENT APPLIED UNDER STATE LAW.—The well-known rule of approximation applied in the survey of sections by the United States land department, which was in force when section 3459 of the Political Code was amended, ought in justice to be applied thereunder, in view of the equities of this case and the conduct of the state officers during all these years.

ID.—PRINCIPLES OF EQUITABLE ESTOPPEL APPLIED IN INTERPRETING STATUTE.—Though it is not necessary to hold that the doctrine of equitable estoppel growing out of the conduct of its officers bind the state, yet it is held apparent that justice and good conscience, which are the foundation of that doctrine, should not be laid out of view in interpreting the statute, which should be construed in harmony with those equitable principles that are admittedly the basis of our jurisprudence, and which are recognized as controlling all upright men.

ID.—RIGHT TO PATENT DISTINGUISHED FROM APPLICATION TO PURCHASE. While the principle of a strict observance of the statute is commendable, as applied to the approval of an original application to purchase, yet where, after the approval of an application, the right to a patent has fully accrued, the case is very different, and must be governed by just and equitable principles and the patent should issue where justice so requires.

APPEAL from an order of the Superior Court of Sacramento County, denying an application for a writ of mandate. C. N. Post, Judge.

The facts are stated in the opinion of the court.

Wallace M. Pence, for Appellants.

U. S. Webb, Attorney General, and Malcolm C. Glenn, Deputy Attorney General, for Respondent.

BURNETT, J.—This is an appeal from an order denying an application for a writ of mandate to require respondent, pursuant to section 3519 of the Political Code, to issue the usual certificate to the governor for the issuance of a patent for certain school lands. Petitioners claim the right to the patent, as the successors in interest to one Alfred Warren, the original applicant for said lands. On January 6, 1886, Warren filed his application or affidavit to purchase the lands therein described and the controversy here grows out of the following averments in the said affidavit: "That said land is not suitable for cultivation; that he had not entered any portion of any lands mentioned in section three thousand four hundred and ninety-four of the Political Code (to wit, the unsold portion of the five hundred thousand acres granted to the state for school purposes, the sixteenth and thirty-sixth sections, and the lands selected in lieu thereof), which, to-

gether with that now sought to be purchased, exceeds *642.24* acres. . . . That the township within which said land is situate was and had been surveyed and sectionized by the United States prior to the date upon which said affidavit was made or filed in said land office, and that said section sixteen lies in one body in the form of a square and contains according to said survey of the United States six hundred forty-two and .24 acres, and that no legal subdivision of said section sixteen contains less than forty acres or more than forty-two acres.''

Section 3495 of the Political Code prescribes the method for the purchase of state school lands and provides that ''any person desiring to purchase any portion not less than the smallest legal subdivision of any of the lands mentioned in section thirty-four hundred and ninety-four, situated in any township which has been surveyed by the United States, must make an affidavit'' containing certain averments, among them, ''whether the land is or is not suitable for cultivation,'' and if the land is not suitable for cultivation, the affidavit must state ''That the applicant has not entered any portion of such lands, which together with that now sought to be entered, exceeds six hundred and forty acres.'' The section further provides that, ''Lands unsuitable for cultivation may be sold in quantities not exceeding *six hundred and forty* acres to any one person.''

No question is raised that Warren acted in good faith, that his affidavit was true in every respect, and that it was in proper form, except that it called for an excess of 2.24 acres over the quantity of land that the statute provides can be sold to one person. It is the contention of the respondent that only one construction is possible of said section of the Political Code, and that contention places the limit of purchase at 640 acres, which cannot be exceeded in any case. The logical conclusion of the contention would seem to be that Warren's application was and is nugatory and void, since it did not contain one of the important and essential elements required by the code. It would follow that no patent could be legally issued to him or to his successors for any part of said land.

In *Hildebrand* v. *Stewart*, 41 Cal. 387, it is held that ''When the law, under which public lands are sold, requires

certain acts to be performed as a prerequisite to the right to
purchase, the courts cannot dispense with the performance of
those acts by legalizing an entry made without complying
with them." To the same effect are *Woods* v. *Sawtelle,* 46
Cal. 391, *Botsford* v. *Howell,* 52 Cal. 158, *Millidge* v. *Hyde,*
67 Cal. 5, [6 Pac. 852], and *McKenzie* v. *Brandon,* 71 Cal.
209, [12 Pac. 428].

The Hildebrand case involved a contest between two claim-
ants to the same land, arising before the surveyor general and
transferred to the district court for adjudication, and it was
held by the supreme court that the application to purchase
by defendant was invalid and ineffectual to vest in him any
right to the land by reason of the absence of the notice to the
occupant or claimant of the house and corral then located
upon said land, as required by the act under which defend-
ant's attempted location was made.

In *Woods* v. *Sawtelle,* 46 Cal. 391, at the time defendant
made his application to purchase the land, plaintiff was in
possession thereof and he had been for more than three years.
The defendant's application was approved by the surveyor
general and a certificate of purchase was issued to him and
plaintiff's application made subsequently was rejected. The
statute provided that if there was an adverse occupant for
more than sixty days at the time an application to purchase
was made, the applicant must so state. There was an omis-
sion in that respect in defendant's said application and the
supreme court held that, by reason of his application being
in proper form, plaintiff, who was the prior occupant but the
subsequent applicant, had the better right to make the pur-
chase.

The contest in the Botsford case, *supra,* was decided by
the lower court in favor of plaintiff, but it was reversed by
the supreme court on the ground that the facts required by
the statute must be stated in the application directly and posi-
tively, whereas plaintiff had stated them in the alternative
form.

In. *Millidge* v. *Hyde* it was held that the demurrer to the
complaint was properly sustained for the reason that plain-
tiff's application failed to state, as required by the statute,
that "There is no valid claim to such land other than that of
the applicant; that he has not entered any land in part satis-

faction of the unsold portion of the 500,000 acre grant, or of the grant in lieu of the sixteenth or thirty-sixth sections, which together with that now sought to be purchased exceeds 320 acres.''

In *McKenzie* v. *Brandon,* 71 Cal. 209, [12 Pac. 428], it was held that plaintiff stated in his affidavit what was not true, when he declared that there was no actual possession of the lands adverse to him, and it was decided that he had no claim to the title. These cases all involved contesting applicants, and it was rightly determined that the claimant complying with the requirements of the statute should be preferred to the one who was remiss.

It is undoubtedly true, also, as asserted by respondent, that ''It has not been the policy of the state to sell large tracts of land but rather, on the other hand, has it been the policy to encourage settlers to live on state lands and to sell lands in small tracts.'' It is equally true, however, that the state should not assume the attitude of a wrongdoer nor should the letter of the statute be applied in favor of injustice where it is possible, by a liberal spirit of interpretation, to reach a righteous conclusion. The facts here, it may be said, are peculiar and persuasive in favor of the claim of petitioners. The application to purchase was made more than twenty-five years ago, the requisite portion of the purchase price was then paid, and for all these years the interest on the balance has been regularly tendered and accepted and finally, on October 25, 1909, the balance of the purchase price was paid. The good faith of the transaction has not been questioned, there is no contesting applicant, no one has been wronged and the excess of the land over 640 acres is so trifling and of such little value as to be scarcely worth considering.

When the application was made and when it was approved by the surveyor general, the agent of the state, and when he issued the certificate of purchase, it was probably considered by the purchaser and the seller that, under the peculiar circumstances, the ''rule of approximation'' should apply. This rule requires the acreage to conform, as nearly as practicable, to the maximum amount prescribed by the statute, but permits the claim where the excess over the statutory amount is less than the deficiency would be should a subdivision be excluded.

It is contended by appellants that the rule was adopted by the land department of the United States at an early date and has been followed since. (*In re H. P. Sayles*, 2 Land Dec. 88, and other cases cited.) It is pointed out that section 2304 of the Revised Statutes [U. S. Comp. Stats. 1901, p. 1413], relative to homesteads for soldiers and sailors, provides that "not exceeding 160 acres" shall be selected, but the rule of approximation is applied to that section (*In re Dotson*, 13 Land Dec., p. 275); furthermore, a special act relative to Nebraska lands limits the amount of land for one individual to 640 acres, but the said rule is applied to this also (Circular 34, Land Dec. 546). It is therefore argued that "This rule of approximation was well known at the time of the amendment to section 3495, *supra*, and it must be presumed that the legislators were familiar with it, and that it was a matter of common knowledge at the time of the passage of the amendment in 1885, and that therefore the amendment was enacted with the intention that it would be interpreted according to the existing decisions of the department. (*United States* v. *Union Pac. R. R. Co.*, 91 U. S. 72, [23 L. Ed. 224].)"

While not desiring to hold that the surveyor general should be governed by this rule in all cases, nor even that he should give it effect at all in approving original applications for purchase, considering the equities involved herein, the small quantity of the excess over the statutory maximum and the conduct of the state's officers through all these years, we think that justice requires the application of the rule here.

It is not necessary either to hold that the doctrine of equitable estoppel growing out of the conduct of its officers binds the state as it does individuals under similar circumstances, but it must be apparent that justice and good conscience, which, Professor Pomeroy says, are the foundation of said doctrine, should not be laid out of view in interpreting the statute. If the contention here were between individuals, no court would hesitate to grant the petition, and we can see no reason why the said statute may not be construed in harmony with those equitable principles that are admittedly the basis of our jurisprudence and which are recognized as controlling by all upright men.

The desire of respondent to require a strict observance of the statute is, of course, commendable, and if this were an

application to purchase, a different situation would be presented, but, in view of the facts already related, we think the patent should issue. The judgment is therefore reversed.

Hart, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 27, 1911.